# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Cathy L. Waldor |
| v. | : | Mag. No. 20-9122 |
| BARUCH FELDHEIM | : | AMENDED CRIMINAL COMPLAINT |
| | : | **FILED UNDER SEAL** |

I, Eugene Taylor, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

_____
Eugene Taylor, Special Agent
Federal Bureau of Investigation

Special Agent Taylor attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this 30th day of March, 2020.

_____  8:38 am
HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE
Signed by SA Taylor at Judge Waldor's direction pursuant to F.R.C.P. 4.1(b)(6)(C).

## ATTACHMENT A

### Count 1
### (Assault of a Federal Officer)

On or about March 29, 2020, in the District of New Jersey and elsewhere, defendant

BARUCH FELDHEIM

did forcibly assault, resist, oppose, impede, intimidate, and interfere with Agent 1 and Agent 2, persons designated in Title 18, United States Code, Section 1114, namely two special agents employed by the Federal Bureau of Investigation, Newark Field Office, while Agent 1 and Agent 2 were engaged in and on account of the performance of Agent 1 and Agent 2's official duties.

In violation of Title 18, United States Code, Section 111(a)(1).

### Count 2
### (False Statement)

On or about March 29, 2020, in the District of New Jersey and elsewhere, defendant

BARUCH FELDHEIM

did knowingly and willfully (a) falsify, conceal, and cover up by trick, scheme, and device, certain material facts; (b) make materially false, fictitious, and fraudulent statements and representations; and (c) make and use false writings and documents knowing them to contain materially false, fictitious, and fraudulent statements and entries.

In violation of Title 18, United States Code, Section 1001.

**ATTACHMENT B**

I, Eugene Taylor, am a Special Agent with the Federal Bureau of Investigation ("FBI").  I have conducted an investigation and discussed this matter with other law enforcement officers who have participated in this investigation and have knowledge of the following facts.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts which I believe are necessary to establish probable cause.  All dates described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

1. At all times relevant to this Complaint:

Relevant Entities and Individuals

a. Defendant BARUCH FELDHEIM was a resident of Brooklyn, New York.

b. Solo Supplies, Inc. ("Solo Supplies"), was a company located in Brooklyn, New York, with access to warehouse space in New York and New Jersey.

c. Doctor A was a medical professional with approximately 106 medical employees in multiple offices across New Jersey.

d. Individual A was a travelling nurse in New Jersey, who worked with medical health professionals, including Doctor A and nursing homes.

e. Coronavirus Disease 2019 ("COVID-19") was a virus first identified in Wuhan, China, which caused severe acute respiratory syndrome. COVID-19 infects people and spreads easily from person-to-person.  On March 11, 2020, the COVID-19 outbreak was characterized as a pandemic by the World Health Organization.

f. Agent 1 was a Special Agent with the FBI Newark Field Office.

g. Agent 2 was a Special Agent with the FBI Newark Field Office.

March 25, 2020 HHS Order

2. On or about March 25, 2020, the Department of Health and Human Services announced the issuance of a Notice under Executive Order 13910 (the "Executive Order") and section 102 of the Defense Production Act of 1950 (the "Act"), 50 U.S.C. § 4512, as amended, designating health and medical resources necessary to respond to the spread of COVID-19 that are scarce or the

supply of which would be threatened by excessive accumulation (the "Designated Materials").

3. These Designated Materials include, but are not limited to, N-95 Filtering Facepiece Respirators, Personal Protection Equipment ("PPE") face masks, PPE surgical masks, sterilization services, and disinfecting devices.

<u>Purchases of Designated Materials from the Defendant</u>

4. Individual A is part of a WhatsApp chat group with healthcare industry professionals called, "Virus 2020!".

5. In or about March 2020, Individual A reached out to the chat group on behalf of Doctor A to purchase COVID-19 supplies that were in short supply. An unidentified individual with a particular phone number, ending in 3288 (the "Target Number"), responded to the request. Subsequent searches of law enforcement databases revealed that the subscriber for the Target Number is FELDHEIM.

6. Individual A negotiated with the Target Number over text message and phone, and ultimately agreed to purchase on behalf of Doctor A approximately 2,000 3PLY surgical masks, 1,000 N-95 surgical masks, 2,000 sterile gowns, and 800 additional gowns made of Hazmat material. Doctor A paid approximately $12,000, which was a mark-up of approximately 700% from what Doctor A normally paid for such supplies.

7. The Target Number directed Individual A and Doctor A to wire money to Solo Supplies. FELDHEIM's wife is listed on corporation formation documents as the owner of Solo Supplies. Doctor A also wrote a check of approximately $5,000 to FELDHEIM.

8. FELDHEIM directed Individual A to an auto repair shop in Irvington, New Jersey ("Warehouse 1"), to pick-up the first two orders of surgical masks and gowns.

9. On or about March 16, 2020, Individual A went to Warehouse 1 to pick up supplies on two separate occasions. He was met there each time by a man, who he later identified as FELDHEIM from a photograph provided by law enforcement. FELDHEIM let Individual A inside Warehouse 1. While inside Warehouse 1, FELDHEIM observed approximately 20 pallets of Coronavirus medical supplies, including boxes of N95 masks, surgical supplies, and different varieties of hand-sanitizer, all of which may be Designated Materials.

10. On or about March 18, 2020, Doctor A went to Warehouse 1 to pick up the last order he purchased, after interacting with the Target Number by text message. Doctor A was met at a warehouse by an individual who fit the description of FELDHEIM. While at Warehouse 1, Doctor A observed dozens of

4

pallets of medical supplies and potential Designated Materials, including pre-packaged Clorox wipes and hand sanitizers of different brands, chemical cleaning supply agents, and surgical supplies for an operating room. Doctor A described the contents of Warehouse 1 as enough to outfit an entire hospital.

11. On or about March 20, 2020, according to Individual A, FELDHEIM told Individual A over the phone that he had to move all the supplies out of Warehouse 1 because of complaints from neighbors surrounding the facility regarding the vehicle traffic outside of the warehouse. Law enforcement subsequently reviewed surveillance footage from a dining establishment across the street. The surveillance footage depicts individuals moving large quantities of materials into a moving truck outside Warehouse 1 on or about March 19, 2020.

12. On or about March 23, 2020, the Target Number attempted to sell Individual A surgical gowns and directed him to 1351 55th Street, Brooklyn, NY 11219 (the "Feldheim Personal Residence"). Records reviewed by law enforcement indicate that FELDHEIM and his wife live at that address.

13. According to records from Customs and Border Protection, on or about March 25, 2020, Solo Supplies received a shipment by truck from Canada of approximately 8 skids of surgical face masks.

14. On or about March 27, 2020, FBI agents took photographs outside of the Feldheim Personal Residence of an empty box of N95 masks and an individual that matches FELDHEIM's appearance.

The Interview of the Defendant by Law Enforcement

15. On or about March 29, 2020, FBI Special Agents witnessed multiple instances where individuals approached the Feldheim Personal Residence, walked up to the front-door, met with individuals, including FELDHEIM, and walked away with boxes or bags.

16. On or about March 29, 2020, Agent 1 and Agent 2 interviewed FELDHEIM outside of the first floor of the Feldheim Personal Residence. Agents 1 and 2 identified themselves as FBI Agents and showed FELDHEIM their credentials. Agents 1 and 2 stated that they were going to stay away from him given concerns over the spread of COVID-19.

17. FELDHEIM did not move away from Agents 1 and 2 as they walked down the stairs. When the agents were approximately four or five feet from FELDHEIM, FELDHEIM intentionally coughed in their direction without covering his mouth.

18. Agents 1 and 2 told FELDHEIM that they were looking to identify COVID-19 materials and had information that he was in possession of such

materials. Subsequently, FELDHEIM informed Agents 1 and 2 that he had COVID-19.

19. FELDHEIM acknowledged that he had N95 masks, gowns, hand sanitizers, and other PPE, but stated that he did not have such materials in warehouse quantities. FELDHEIM said that he worked for a company that buys and sells PPE materials on an as-needed basis, and that this company does not take physical possession of PPE Materials. Rather, FELDHEIM said his employer acts as an intermediary and arranges for the source of the PPE materials to ship them directly to hospitals. FELDHEIM said, however, that his employer is shut down due to COVID-19.

20. Agents 1 and 2 informed FELDHEIM that it is a felony to lie to federal officers and that they had information that he had warehouses full of PPE materials and had engaged in direct transactions with healthcare professionals to sell that equipment.

21. FELDHEIM denied that he had possession of PPE Materials in large quantities or that he sold them directly to individuals. Instead, he reiterated that he was merely a salesman who worked for a company that intermediated transactions.

22. When asked by Agents 1 and 2, FELDHEIM stated that he tested positive for COVID-19 approximately about two weeks ago.

23. Agents 1 and 2 left the Feldheim Personal Residence. FBI agents subsequently observed additional instances of individuals picking up packages from the Feldheim Personal Residence.